# EXHIBIT B

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

KETEVAN (KETI) CHICHINADZE,

                         Plaintiff,

                -v.-

BG BAR INC. d/b/a MEHANATA
BULGARIAN BAR, ALEXANDER DIMITROV,
and TANIA DIMCHEVA,

                         Defendants.

---

18 Civ. 8069 (KPF)

**OPINION AND ORDER**

---

KATHERINE POLK FAILLA, District Judge:

Plaintiff Ketevan (Keti) Chichinadze brings claims pursuant to the Fair
Labor Standards Act (the "FLSA"), 29 U.S.C. §§ 201-219, the New York Labor
Law (the "NYLL"), N.Y. Lab. Law §§ 650-665, 195, 198, and the New York City
Human Rights Law (the "NYCHRL"), N.Y. Admin. Code §§ 8-101 to 8-132,
against her former employer, BG Bar Inc. ("BG Bar"), as well as BG Bar's
owner, Alexander Dimitrov, and its manager, Tania Dimcheva.  Plaintiff now
moves, pursuant to Rule 56 of the Federal Rules of Civil Procedure, for partial
summary judgment against BG Bar and Dimitrov with respect to liability and
damages on certain of her FLSA and NYLL claims.[1]  Plaintiff has also requested
that the Court strike certain of Defendants' summary judgment submissions.
For the reasons that follow, Plaintiff's motion for partial summary judgment is
granted and Plaintiff's motion to strike is denied.

---

[1]     Plaintiff acknowledges that with respect to Dimcheva, there remains a material dispute
        as to whether she was Plaintiff's employer for purposes of the alleged FLSA and NYLL
        violations.  As such, the Court understands Plaintiff to be pursuing summary judgment
        only as to BG Bar and Dimitrov.  For ease of reference, the Court will refer to
        Defendants BG Bar and Dimitrov collectively as "Defendants" for the purposes of this
        motion.

# BACKGROUND[2]

## A.    Factual Background

### 1.    BG Bar

BG Bar is a bar located in the Lower East Side neighborhood of Manhattan. (Pl. 56.1 ¶ 1). BG Bar does business under the names "Mehanata" and "Bulgarian Bar." (*Id.* at ¶ 2). Its annual gross volume of sales is in excess of $500,000. (*Id.* at ¶ 5).

BG Bar is owned and operated by Alexander Dimitrov, who is regularly present at BG Bar. (Pl. 56.1 ¶¶ 7-8). Dimitrov is responsible for hiring and firing BG Bar employees. (*Id.* at ¶ 9). He also controls employees' schedules

---

[2]    The facts stated herein are largely drawn from the parties' submissions in connection with Plaintiff's motion for partial summary judgment, though for the reasons discussed in greater detail below, the Court does not credit certain statements in Defendants' submissions. Plaintiff's Rule 56.1 Statement of Undisputed Facts is referred to as "Pl. 56.1" (Dkt. #41), and Defendants' Counter-Statement of Material Facts is referred to as "Def. 56.1" (Dkt. #50). Plaintiff's Complaint is referred to as "Complaint" (Dkt. #4).

Citations to the parties' Rule 56.1 Statements incorporate by reference the documents and deposition testimony cited therein. *See* Local Rule 56.1(d). Generally speaking, where facts stated in a party's Local Rule 56.1 Statement are supported by testimonial or documentary evidence, and denied with only a conclusory statement by the other party, the Court finds such facts to be true. *See* Local Rule 56.1(c), (d); *Biberaj* v. *Pritchard Indus., Inc.*, 859 F. Supp. 2d 549, 553 n.3 (S.D.N.Y. 2012) ("A nonmoving party's failure to respond to a Rule 56.1 statement permits the court to conclude that the facts asserted in the statement are uncontested and admissible." (internal quotation marks omitted) (quoting *T.Y.* v. *N.Y.C. Dep't of Educ.*, 584 F.3d 412, 418 (2d Cir. 2009))).

For ease of reference, Plaintiff's brief in support of her motion for partial summary judgment is referred to as "Pl. Br." (Dkt. #42); Defendants' opposition brief is referred to as "Def. Opp." (Dkt. #48); and Plaintiff's reply brief is referred to as "Pl. Reply" (Dkt. #51). Josef Nussbaum's declaration submitted in connection with Plaintiff's opening briefing is referred to as "Nussbaum Decl." (Dkt. #43). Alexander Dimitrov's declaration submitted in connection with Defendants' opposition briefing is referred to as "Dimitrov Decl." (Dkt. #49). The transcript of Dimitrov's deposition in this matter is referred to as "Dimitrov Dep." (Dkt. #43-10).

and rates of pay, and maintains BG Bar's employment records. (*Id.* at ¶¶ 10-11). BG Bar is managed by Tania Dimcheva. (Complaint ¶ 6).

Dimitrov hired Plaintiff to work as a bartender at BG Bar in or around September 2014. (Pl. 56.1 ¶¶ 12-13). During the time that Plaintiff worked for BG Bar — from approximately September 2014 to July 2018 — the bar was open to customers on Thursday, Friday, and Saturday evenings, from 8:00 p.m. until 4:00 a.m., though on rare occasions it closed early at 2:00 a.m. (*Id.* at ¶¶ 13-14, 19; Def. 56.1 ¶ 19). Additionally, BG Bar was occasionally open on Tuesdays, Wednesdays, and Saturdays for parties. (Pl. 56.1 ¶ 15).

For the duration of Plaintiff's employment, she generally worked as a bartender three nights a week, usually on Thursdays, Fridays, and Saturdays. (Pl. 56.1 ¶ 20). In addition, Plaintiff occasionally worked at BG Bar on Tuesdays, Wednesdays, and/or Sundays. (*Id.* at ¶ 21). Defendants have produced records of the hours that they maintain Plaintiff worked during this period. (*Id.* at ¶¶ 22-33; *see also* Nussbaum Decl., Ex. C-G). These records reflect that Plaintiff worked for Defendants for at least 252 hours in 2014; 432 hours in 2015; 970 hours in 2016; 1,314 hours in 2017; and 662 hours in 2018. (Pl. 56.1 ¶¶ 29-33; *see also* Nussbaum Decl., Ex. C-G).

### 2.    BG Bar Wage Records and Practices

BG Bar does not have a system in which employees "clock in" and "clock out" when they begin and end their shifts. (Pl. 56.1 ¶ 16; Def. 56.1 ¶¶ 16-17). However, on evenings when BG Bar is open, bartenders generally arrive 30 to 60 minutes before the bar is opened to customers (Pl. 56.1 ¶ 18), and

3

bartenders' shifts generally end roughly 30 minutes after the bar closes (*id.* at ¶ 19; Def. 56.1 ¶ 19).

During the relevant period, the minimum wage under the FLSA was $7.25 per hour, *see* 29 U.S.C. § 206(a)(1), while the applicable New York minimum wage rate increased from $8.00 to $13.00, *see* NYLL § 652(1).  As stated above, Dimitrov determined the rate of pay of BG Bar employees.  (Pl. 56.1 ¶ 10).  At his deposition in this action, Dimitrov testified that during Plaintiff's employment at BG Bar, she was paid an hourly wage ranging between $3.00 and $3.50.  (*Id.* at ¶¶ 34-35, 40; Def. 56.1 ¶¶ 34-35; *see, e.g.*, Dimitrov Dep. 49:10-24).  He characterized Plaintiff's salary at this rate as "house pay."  (*See* Dimitrov Dep. 49:20-23).  Dimitrov testified that in addition to this house pay, bartenders also collected and kept tips from customers.  (*Id.* at 49:10-50:11; *see also* Dimitrov Decl. ¶¶ 4-15).  To substantiate Dimitrov's testimony, Defendants produced copies of checks issued to Plaintiff that purport to reflect payments of this house pay for each month that she worked at BG Bar between 2014 and 2018.  (Dimitrov Decl., Ex. A-E; *see also id.* at ¶¶ 4-15 (listing the check payments made to Plaintiff during the relevant period)).

BG Bar also employed the company ADP for its payroll processing, and issued wage statements to its employees using ADP's payroll system.  (Dimitrov Dep. 18:23-19:3; Def. 56.1 ¶ 48; *see also* Dimitrov Decl., Ex. A-E (enclosing ADP wage statements issued to Plaintiff)).  However, both sides agree that Plaintiff's wage statements did not accurately reflect either the hours worked by

her or the hourly wages she was paid.  (Pl. 56.1 ¶¶ 36-37; Def. 56.1 ¶¶ 36-37).

As noted above, Defendants have produced separate records of the hours they

maintain that Plaintiff worked during her period of employment.  (*See*

Nussbaum Decl., Ex. C-G).[3]  These purported records of Plaintiff's hours are

irreconcilable with Plaintiff's wage statements from ADP.  (*See* Pl. 56.1 ¶¶ 38-

43).  For example, Plaintiff's ADP wage statement for the period covering

October 1, 2014, through October 31, 2014, indicates that Plaintiff was paid an

hourly rate of $10 for 52 hours of work.  (Pl. 56.1 ¶ 38).  However, the records

of Plaintiff's hours produced by Defendants reflect that she worked at least 86

hours during this period.  (*Id.* at ¶ 39).  And Defendants do not dispute that

Plaintiff's ADP wage statement for October 2014 was inaccurate as to both

Plaintiff's hours and wages.  (*See* Def. 56.1 ¶ 39).[4]

BG Bar maintains posters in English and Spanish that purportedly detail

the requirements of the "wage-and-hour laws" and the tip credit minimum

wage requirement.  (Def. 56.1 ¶ 44).  Plaintiff otherwise was not provided with a

notice regarding her wages as required by NYLL § 195.  (Pl. 56.1 ¶¶ 44-47; *see*

*also* Def. 56.1 ¶ 44).  Defendants maintain that they relied upon ADP for their

compliance with relevant federal and state laws.  (Def. 56.1 ¶ 48).

---

[3]      These records appear to be extracts of Excel spreadsheets.

[4]      Plaintiff also alleges that upon receiving an ADP wage statement, she was either
required to reimburse Defendants for the full amount reflected in the statement, or an
equivalent amount was withdrawn from her tips.  (Pl. Br. 3 n.4).

B.    **Procedural Background**

Plaintiff commenced this action on September 5, 2018, with the filing of her Complaint alleging violations of the NYLL, FLSA, and NYCHRL.  (Dkt. #4). Defendants filed their Answer to the Complaint on October 18, 2018.  (Dkt. #9). Following an unsuccessful mediation, the Court entered a Case Management Plan and Scheduling Order and the parties proceeded to discovery.  (Dkt. #23; *see also* Dkt. #27, 30).

On January 13, 2020, Plaintiff wrote to the Court to request a pre-motion conference regarding her anticipated motion for partial summary judgment as to Defendants' failures to pay statutorily mandated minimum wages and to provide notices required under the NYLL.  (Dkt. #31).  In the letter, Plaintiff explained that Dimitrov had testified at his deposition — in both his personal capacity and as a witness on behalf of BG Bar pursuant to Federal Rule of Civil Procedure 30(b)(6) — that Plaintiff was paid between $3.00 and $3.50 per hour during her time as an employee.  (*Id.*).

At the pre-motion conference held on February 24, 2020, Plaintiff reiterated her position that based on Dimitrov's testimony, there was no dispute that Defendants had not paid Plaintiff the requisite minimum wage during her employment.  (Dkt. #36 at 3-4 (transcript)).  When questioned by the Court, counsel for Defendants agreed that Dimitrov's testimony reflected "a deficiency in the wages paid" Plaintiff.  (*Id.* at 12).  In granting Plaintiff's request for leave to file a motion for partial summary judgment, the Court expressed

6

concerns about Defendants' basis for opposing such a motion. (*Id.* at 14).

Specifically, the Court admonished Defendants' counsel as follows:

> I am asking you to go back to your client and to
> communicate that I have grave concerns about his
> ability to defend this particular motion, given what's in
> the deposition transcript that's been shown to me ....
> And I'd be very, very concerned if his defense were
> somehow factually at odds with what has been said in
> the deposition.

(*Id.*). The Court proceeded to set a briefing schedule on Plaintiff's motion for

partial summary judgment. (*Id.* at 14-15). Plaintiff filed her motion and

supporting papers on April 17, 2020. (Dkt. #40-43). On June 5, 2020, after

receiving two extensions (*see* Dkt. #45, 47), Defendants filed a memorandum of

law in opposition to Plaintiff's motion (Dkt. #48), and submitted their

supporting papers four days later, after the twice-extended deadline had

passed (Dkt. #49-50). Plaintiff's reply brief and supporting declaration were

filed on June 19, 2020. (Dkt. #51-52). In her reply brief, Plaintiff requested

either that the Court strike Defendants' supporting papers as untimely (Pl.

Reply 3-4), or that the Court strike Dimitrov's declaration for contradicting

Dimitrov's deposition testimony (*id.* at 4-7).

## DISCUSSION

### A.    The Court Denies Plaintiff's Motion to Strike

At the outset, the Court addresses the request made in Plaintiff's reply

briefing that this Court disregard Dimitrov's declaration and Local Rule 56.1

Statement submitted in support of Defendants' opposition briefing. (*See* Pl.

Reply 3-7). Plaintiff argues that the submissions were untimely, and further,

7

that Dimitrov's declaration includes misrepresentations made with the intent of creating issues of fact. (*Id.*). While Defendants did not request an opportunity to respond to the arguments made in Plaintiff's reply briefing, in their opposition submissions they sought both to excuse and to reframe certain contradictions between Dimitrov's declaration and his prior testimony. (*See* Def. Opp. 5-6; Def. 56.1 ¶¶ 34-35, 40, 43).

### 1. Applicable Law

#### a. Timeliness of Submissions

Federal Rule of Civil Procedure 6(b)(1)(B) provides that courts may accept late filings from a party "on motion made after the time has expired if the party failed to act because of excusable neglect." Fed. R. Civ. P. 6(b)(1)(B). The question of whether neglect is excusable is "at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." *Pioneer Inv. Servs. Co.* v. *Brunswick Assocs. Ltd. P'ship,* 507 U.S. 380, 395 (1993); *see also Morisseau* v. *DLA Piper*, 255 F.R.D. 127, 128-29 (S.D.N.Y. 2008). The relevant circumstances include "the reason for delay, including whether it was within the reasonable control of the [party], the danger of prejudice to the [opposing party], and the length of the delay and its potential impact on these judicial proceedings." *Morisseau*, 255 F.R.D. at 129 (citations omitted).

#### b. Sham Issues of Fact

While the Second Circuit has cautioned against district courts "routinely engag[ing] in searching, skeptical analyses of parties' testimony in opposition to

8

summary judgment," *Rojas* v. *Roman Catholic Diocese of Rochester*, 660 F.3d 98, 106 (2d Cir. 2011), it has recognized that "in certain cases a party's inconsistent and contradictory statements transcend credibility concerns and go to the heart of whether the party has raised *genuine* issues of material fact to be decided by a jury." *Id.* In particular, where "the relevant contradiction is not only unequivocal but is left unexplained — indeed, is inexplicable — a district court may determine that a [party] has manufactured a sham issue of fact." *In re Fosamax Prods. Liab. Litig.*, 707 F.3d 189, 194 (2d Cir. 2013).

The Second Circuit has summarized the "sham issue of fact" or "sham affidavit" doctrine thusly: "[I]t is well established ... that a party may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that, by omission or addition, contradicts the affiant's previous deposition testimony." *Kennedy* v. *City of N.Y.,* 570 F. App'x 83, 84 (2d Cir. 2014) (summary order) (internal quotation marks omitted) (quoting *Hayes* v. *N.Y.C. Dep't of Corr.*, 84 F.3d 614, 619 (2d Cir. 1996)). "If a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact." *Hayes*, 84 F.3d at 619 (quoting *Perma Research & Dev. Co.* v. *Singer Co.*, 410 F.2d 572, 578 (2d Cir. 1969)). As such, "factual issues created solely by an affidavit crafted to oppose a summary judgment motion are not 'genuine' issues for trial." *Id.*

9

### 2.    Analysis

The Court will not strike Defendants' Local Rule 56.1 Statement and the Dimitrov Declaration merely on the basis of their untimeliness.  Plaintiff correctly observes that these submissions were filed after the deadline to do so had passed, and after Defendants had sought and been granted two extensions.  (Pl. Reply 3-4).  However, given that Defendants' delay was of a relatively brief duration, and that Plaintiff has not established prejudice from such delay, the Court is disinclined to strike Defendants' submissions on this basis.  *See Raymond* v. *Int'l Bus. Machs. Corp.*, 148 F.3d 63, 66 (2d Cir. 1998) ("[M]ere inadvertence, without more, *can* in some circumstances be enough to constitute 'excusable neglect' justifying relief"); *cf. Petaway* v. *Osden*, 827 F. App'x 150, 152 (2d Cir. 2020) (summary order) (declining to find abuse of discretion in district court's granting of extension of time where plaintiff failed to establish that he was prejudiced by the extension).

But the Court does agree with Plaintiff that the contradictions between Dimitrov's declaration and his deposition testimony merit further examination. (*See* Pl. Reply 4-7).  As relevant here, Dimitrov unequivocally and repeatedly testified in his deposition that Plaintiff's pay was comprised of: (i) an hourly wage of $3.00 or $3.50, and (ii) tips.  (Dimitrov Dep. 49:7-51:2, 56:3-22).  For example, Dimitrov testified as follows:

> Q. My question to you is: Did Keti receive an hourly wage for every hour that she worked?
>
> A. Look, it's you know like I have to check my books, but what I know and what everything is based off of is

> the bartenders they got paid three dollars an hour or 3.50 an hour plus they collect all the tips.  That's what I give them. …  So when they start working we calculate three dollars per hour which is a house pay generally for the month and then they get the tips.

(Dimitrov Dep. 49:7-23).

> Q. You as an employer have an obligation to pay your employees an hourly wage?
>
> A. That's why I give them a house pay.  The house pay is based on the three dollars per hour like whatever, 3 or 3.50.  I have to ask my accountant.  It is average usually like you know three, four hundred dollars a month plus the tips.

(*Id.* at 50:12-18).

As another example, when questioned about BG Bar's wage statement practices, Dimitrov admitted that the wage statements provided to Plaintiff were inaccurate, as they reflected an hourly rate of $10, when Plaintiff's purported hourly house pay was $3:

> Q. Even though you were paying her three dollars an hour to make it easier for yourself you were just paying — you just wrote ten dollars an hour?  Even though you were paying her three dollars an hour you just wrote ten dollars an hour on the wage statement because it is easier for you?
>
> A. Yes.
>
> Q. But you weren't paying her ten dollars an hour, you were paying her three dollars an hour?
>
> A. Yes.
>
> Q. But you don't know for sure you paid her three dollars for every hour that she worked?
>
> A. That was like mutual agreement at the beginning when I hired her.  Like I told her that I am going to pay

11

> this house pay and then she's going to work for tips and
> all these years everybody is more than happy to work
> there including her.

(Dimitrov Dep. 56:3-22).  In sum, when asked precise questions about
Plaintiff's wages in his deposition, Dimitrov mentioned only (i) the "house pay"
ranging between $3.00 and $3.50 an hour and (ii) the collectively pooled and
distributed tips.  Put differently, Dimitrov admitted in his deposition that
Plaintiff was paid an hourly rate of $3.00 or $3.50, which is well below the
applicable minimum wage.

In opposition to the instant motion, Defendants submitted a Local
Rule 56.1 Statement and the Dimitrov Declaration, both of which sharply
contradict Dimitrov's deposition testimony.  Defendants would have the Court
accept that in addition to the payments described unambiguously by Dimitrov
in his deposition, Plaintiff also received weekly and unrecorded cash payments.
(Def. 56.1 ¶¶ 34-43; Dimitrov Decl. ¶¶ 4-15).  This claim is completely
unsupported by the record.  Indeed, the records annexed to Dimitrov's
Declaration include checks that Dimitrov characterizes as reflecting payments
of an hourly wage ranging between $3.00 and $3.50.  (Dimitrov Decl. ¶¶ 4-15;
*see also id.*, Ex. A-E).  At most, these records reinforce Dimitrov's deposition
testimony.  Thus, while the Second Circuit has cautioned that the sham
affidavit rule may be inappropriate where the deposition testimony at issue "is
contradicted by evidence other than the deponent's subsequent affidavit,"
*Torrico* v. *Int'l Bus. Machs. Corp.*, 319 F. Supp. 2d 390, 394 n.2 (S.D.N.Y. 2004)

12

(quoting *Palazzo ex rel. Delmage* v. *Corio*, 232 F.3d 38, 43-44 (2d Cir. 2000)),

Defendants have put forth no such evidence here.  *See Gilani* v. *GNOC Corp.*,

No. 04 Civ. 2935 (ILG), 2006 WL 1120602 at *3 (E.D.N.Y. Apr. 26, 2006)

(finding exception to "sham affidavit" rule inapplicable where party submitted

no evidence corroborating the conflicting affidavit testimony).

　　　In their Local Rule 56.1 Statement, Defendants seek to excuse Dimitrov's

deposition testimony on the basis that Bulgarian is his first language.  (Def.

56.1 ¶¶ 34-35, 40, 43).  What is more, they attempt to reframe Dimitrov's

testimony as "limited *solely* to the issues of [P]laintiff's house pay and tips"

"given his understanding of the line of questioning[.]"  (*Id.*).  However, this

argument is belied by the fact that Defendants did not request that an

interpreter attend Dimitrov's deposition.  Further, when asked at the outset of

the deposition if he was "fluent" in English, Dimitrov responded that he was

"pretty decent."  (Dimitrov Dep. 7:12-13).  And in providing the answers at

issue, at no point did Dimitrov indicate that he did not understand the

questions being posed to him.  (*See generally id.*).  *See Toyama* v. *Hasaki Rest.,

Inc.*, No. 13 Civ. 4892 (AKH), 2014 WL 7234602, at *4 & n.1 (S.D.N.Y. Dec. 18,

2014) (declining to find that declaration contradicting deposition testimony

created issues of fact where declarant testified at deposition that she

understood English and was "fluent enough").  Moreover, Dimitrov was

represented by counsel at his deposition; counsel apparently perceived no

difficulties in Dimitrov's comprehension of or answers to the deposition

questions.  Dimitrov's counsel similarly submitted no corrections to Dimitrov's

13

deposition transcript when given the opportunity to do so.  (*See* Pl. Reply 7 n.3).  *See also In re Fosamax Prods. Liab. Litig.*, 707 F.3d at 195 (noting that the fact that a recantation of prior sworn testimony occurred only after the opposing party moved for summary judgment "increased the likelihood that it was intended solely to defeat the motion for summary judgment").  Finally, the Court observes that Dimitrov's sworn declaration was submitted in English, and Dimitrov does not represent either that he had any assistance in its drafting or that it was translated for him prior to his execution of it.  (*See generally* Dimitrov Decl.).  For all of these reasons, the Court rejects Defendants' belated efforts to reframe (and, indeed, to restate) Dimitrov's deposition testimony.

The Court would be hesitant to strike Defendants' summary judgment submissions merely on the basis of their untimeliness.  Here, however, there is more, including Defendants' blatant efforts to contradict Dimitrov's sworn testimony after the fact, following the Court's express admonitions against doing so.  Even so, the Court finds that it need not strike Defendants' submissions from the record, but concludes instead that Defendants cannot rely on either the Dimitrov Declaration or any related representations in Defendants' Local Rule 56.1 Statement to raise a disputed issue of material fact.  *See Chiaramonte* v. *Animal Med. Ctr.*, No. 13 Civ 5117 (KPF), 2016 WL 299026, at *5 n.5 (S.D.N.Y. Jan. 22, 2016) (concluding that a party could not raise a genuine issue of material fact "by introducing an affidavit that … contradicts her prior testimony" (citing *Hayes*, 84 F.3d at 619)).  As such, the

Court will consider whether issues of material fact exist on the basis of

Plaintiff's summary judgment submissions, as well as Defendants' submissions

to the extent they are not contradicted by Dimitrov's deposition testimony.

**B.      The Court Grants Plaintiff's Motion for Summary Judgment**

The Court now turns to Plaintiff's motion for partial summary judgment

on the questions of BG Bar's and Dimitrov's liability for (i) failing to pay

Plaintiff the statutorily required minimum wage and (ii) failing to provide

Plaintiff with the appropriate wage notices and wage statements, as well as

(iii) the extent of Plaintiff's entitlement to damages for those failures.  Plaintiff

argues that Dimitrov's deposition testimony serves as an admission that

Plaintiff was not paid the minimum wage (Pl. Br. 7-10), and that Dimitrov also

admitted that Plaintiff was not provided with the required wage notices and

wage statements (*id.* at 11-13).  Accordingly, Plaintiff seeks damages for the

hours to which Defendants have admitted that she worked while she was

employed at BG Bar, on the theory that Defendants owe her the difference

between the roughly $3.00 hourly wage to which Dimitrov admitted and the full

minimum wage to which Plaintiff is entitled.  (*Id.*).  She also seeks liquidated

damages under the NYLL for the same minimum wage violations (*id.* at 10), as

well as statutory damages authorized under the NYLL for Defendants' wage

notice and wage statement violations (*id.* at 11-13).

Defendants do not dispute that BG Bar and Dimitrov were Plaintiff's

employers, or that Plaintiff worked the hours for which she seeks damages in

her summary judgment briefing.  (Def. Opp. 2).  Defendants instead assert that

15

Plaintiff was paid the applicable minimum wage. (*Id.* at 2-3). In support of this argument Defendants put forth the Dimitrov Declaration — which, for the many reasons just outlined, the Court will not consider in determining whether triable issues exist.

### 1.    Applicable Law

#### a.    Summary Judgment Under Federal Rule of Civil Procedure 56

Rule 56(a) provides that a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp.* v. *Catrett*, 477 U.S. 317, 322 (1986); *Anderson* v. *Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).[5] A genuine dispute exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Fireman's Fund Ins. Co.* v. *Great Am. Ins. Co. of N.Y.*, 822 F.3d 620, 631 n.12 (2d Cir. 2016) (internal quotation marks and citation omitted). A fact is "material" if it "might affect the outcome of the suit under the governing law[.]" *Anderson*, 477 U.S. at 248.

While the moving party "bears the initial burden of demonstrating 'the absence of a genuine issue of material fact,'" *ICC Chem. Corp.* v. *Nordic Tankers*

---

[5]    The 2010 Amendments to the Federal Rules of Civil Procedure revised the summary judgment standard from a genuine "issue" of material fact to a genuine "dispute" of material fact. *See* Fed. R. Civ. P. 56, advisory comm. notes (2010 Amendments) (noting that the amendment to "[s]ubdivision (a) ... chang[es] only one word — genuine 'issue' becomes genuine 'dispute.' 'Dispute' better reflects the focus of a summary-judgment determination."). This Court uses the post-amendment standard, but continues to be guided by pre-amendment Supreme Court and Second Circuit precedent that refer to "genuine issues of material fact."

*Trading a/s*, 186 F. Supp. 3d 296, 301 (S.D.N.Y. 2016) (quoting *Catrett*, 477

U.S. at 323), the party opposing summary judgment "must do more than

simply show that there is some metaphysical doubt as to the material facts,"

*Matsushita Elec. Indus. Co.* v. *Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *see

also Brown* v. *Henderson*, 257 F.3d 246, 252 (2d Cir. 2001).  Rather, the non-

moving party "'must set forth specific facts showing that there is a genuine

issue for trial.'"  *Parks Real Estate Purchasing Grp.* v. *St. Paul Fire & Marine Ins.

Co.*, 472 F.3d 33, 41 (2d Cir. 2006) (quoting Fed. R. Civ. P. 56(e)).

    "When ruling on a summary judgment motion, the district court must

construe the facts in the light most favorable to the non-moving party and

must resolve all ambiguities and draw all reasonable inferences against the

movant."  *Dallas Aerospace, Inc.* v. *CIS Air Corp.*, 352 F.3d 775, 780 (2d Cir.

2003).  In considering "what may reasonably be inferred" from evidence in the

record, however, the court should not accord the non-moving party the benefit

of "unreasonable inferences, or inferences at war with undisputed facts."  *Berk*

v. *St. Vincent's Hosp. & Med. Ctr.*, 380 F. Supp. 2d 334, 342 (S.D.N.Y. 2005)

(quoting *Cnty. of Suffolk* v. *Long Island Lighting Co.*, 907 F.2d 1295, 1318 (2d

Cir. 1990)).  Moreover, "[t]hough [the Court] must accept as true the allegations

of the party defending against the summary judgment motion, … conclusory

statements, conjecture, or speculation by the party resisting the motion will not

defeat summary judgment."  *Kulak* v. *City of N.Y.*, 88 F.3d 63, 71 (2d Cir. 1996)

(internal citation omitted) (citing *Matsushita*, 475 U.S. at 587; *Wyler* v. *United*

*States*, 725 F.2d 156, 160 (2d Cir. 1983)); *accord Hicks* v. *Baines*, 593 F.3d 159, 166 (2d Cir. 2010).

### b.    The Burden of Proof Under the FLSA and the NYLL

An employee who brings an action under the FLSA or the NYLL for unpaid wages must prove that she performed the work and was not compensated properly for her time. *See Grochowski* v. *Phoenix Constr.*, 318 F.3d 80, 87 (2d Cir. 2003) (citing *Anderson* v. *Mt. Clemens Pottery Co.*, 328 U.S. 680, 686-87 (1946)). However, what is required of an employee to discharge this burden will depend to an extent on whether her employer met their recordkeeping obligations under the FLSA and NYLL.

The FLSA requires an employer to "make, keep, and preserve" records of employee wages, hours, and employment conditions. 29 U.S.C. § 211(c). Under the FLSA, "[w]hen an employer fails to maintain accurate and complete records of the hours employees work and the amounts they are paid, the plaintiff-employee need only … submit 'sufficient evidence from which violations of the [FLSA] and the amount of an award may be reasonably inferred.'" *Gonzalez* v. *Masters Health Food Serv. Inc.*, No. 14 Civ. 7603 (VEC), 2017 WL 3835960, at *16 (S.D.N.Y. July 27, 2017) (quoting *Reich* v. *S. New Eng. Telecomms. Corp.*, 121 F.3d 58, 66 (2d Cir. 1997)). An employee discharges his burden at this first step "if [she] … can prove that [she] 'in fact performed work for which [she] was improperly compensated and if [she] produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference.'" *Hernandez* v. *JRPAC Inc.*, No. 14 Civ.

18

4176 (PAE), 2016 WL 3248493, at *27 (S.D.N.Y. June 9, 2016) (quoting *Mt. Clemens Pottery Co.*, 328 U.S. at 687). "This burden is 'not high' and may be met 'through estimates based on [the employee's] own recollection.'" *Id.* (quoting *Kuebel* v. *Black & Decker Inc.*, 643 F.3d 352, 362 (2d Cir. 2011)).

If an employee makes this showing, "[t]he burden then shifts to the employer to come forward [i] with evidence of the precise amount of work performed or [ii] with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence." *JRPAC*, 2016 WL 3248493, at *27 (quoting *Mt. Clemens Pottery Co.*, 328 U.S. at 687-88). "If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result may be only approximate." *Gonzalez*, 2017 WL 3835960, at *16 (quoting *Mt. Clemens Pottery Co.*, 328 U.S. at 688).

"A similar standard applies to unpaid compensation claims under [the] NYLL." *Gonzalez*, 2017 WL 3835960, at *16 (citing *Canelas* v. *World Pizza, Inc.*, No. 14 Civ. 7748 (ER), 2017 WL 1233998, at *9 (S.D.N.Y. Mar. 31, 2017); NYLL § 196-a(a)); *see Garcia* v. *JonJon Deli Grocery Corp.*, No. 13 Civ. 8835 (AT), 2015 WL 4940107, at *4 n.8 (S.D.N.Y. Aug. 11, 2015) ("Courts use the same burden-shifting framework to determine liability for unpaid overtime under the NYLL [and the FLSA].").  But under the NYLL, an employer who fails to keep accurate records shoulders a more stringent burden of proof:  "NYLL § 196-a provides that where an employer fails to 'keep adequate records or provide statements of wages to employees as required' by the statute, the employer 'shall bear the burden of proving that the complaining employee was paid wages, benefits and

19

wage supplements.'"  *Canelas*, 2017 WL 1233998, at *9 (quoting NYLL § 196-a(a)); *see generally Gamero* v. *Koodo Sushi Corp.*, 272 F. Supp. 3d 481, 497 (S.D.N.Y. 2017) (discussing the FLSA and NYLL burden-shifting frameworks where an employer's payroll records are inaccurate or incomplete), *aff'd*, 752 F. App'x 33 (2d Cir. 2018) (summary order).  "By its terms, the NYLL — unlike the FLSA — does not permit an employer to discharge this burden by undermining the reasonableness of an employee's evidence that [she] was underpaid."  *Id.* at 498.  In contrast, the NYLL requires that an employer demonstrate by a preponderance of the evidence that it in fact paid its employees "wages, benefits and wage supplements."  NYLL § 196-a(a); *see JRPAC*, 2016 WL 3248493, at *36.  And "[i]f an employer cannot satisfy its burden under the FLSA, it cannot satisfy th[is] 'more demanding burden' of the NYLL."  *Canelas*, 2017 WL 1233998, at *9 (quoting *Doo Nam Yang* v. *ACBL Corp.*, 427 F. Supp. 2d 327, 337 n.15 (S.D.N.Y. 2005)).

### c. Minimum Wage Requirements Under the FLSA and the NYLL

"The FLSA and the NYLL both 'guarantee[ ] compensation for all work … engaged in by [covered] employees.'"  *Salinas* v. *Starjem Rest. Corp.*, 123 F. Supp. 3d 442, 472 (S.D.N.Y. 2015) (quoting *Kuebel*, 643 F.3d at 359).  "To establish liability on a claim for underpayment of wages, 'a plaintiff must prove that [she] performed work for which [she] was not properly compensated, and that the employer had actual or constructive knowledge of that work.'"  *Id.*

(quoting *Kuebel,* 643 F.3d at 361).  Where a plaintiff brings claims under both the FLSA and the NYLL, she "may not receive a 'double recovery' of back wages[.]"  *JRPAC*, 2016 WL 3248493, at *31 (quoting *Gen. Tel. Co. of the Nw., Inc.* v. *EEOC*, 446 U.S. 318, 333 (1980)); *cf. Rana* v. *Islam*, 887 F.3d 118, 123 (2d Cir. 2018) (per curiam) ("We therefore interpret the NYLL and FLSA as not allowing duplicative liquidated damages for the same course of conduct.").

At all times relevant to Plaintiff's claims here, the minimum wage under the FLSA was $7.25 per hour, *see* 29 U.S.C. § 206(a)(1), while the applicable New York minimum wage rate increased from $8.00 to $13.00 during the relevant time period, *see* NYLL § 652(1).  Because the NYLL prescribes a higher minimum wage, it shall be the focus of the Court's analysis.  *See Hengjin Sun* v. *China 1221, Inc.*, No. 12 Civ. 7135 (RJS), 2016 WL 1587242, at *2 (S.D.N.Y. Apr. 19, 2016) ("Where … 'a plaintiff is entitled to damages under both federal and state wage law,' the Court has discretion to award Plaintiffs damages under the statute providing the greatest amount of relief." (quoting *Jiao* v. *Shi Ya Chen*, No. 03 Civ. 0165 (DF), 2007 WL 4944767, at *17 (S.D.N.Y. Mar. 30, 2007))).

    **d.**  **Tip Credit Requirements Under the FLSA and the NYLL**

"Both the FLSA and the NYLL permit an employer to pay a tipped worker a cash wage that is lower than the statutory minimum wage, provided that the cash wage and the employee's tips, taken together, are at least equivalent to the minimum wage."  *Inclan* v. *N.Y. Hosp. Grp., Inc.*, 95 F. Supp. 3d 490, 497 (S.D.N.Y. 2015).  "This allowance against the minimum cash wage is known as

21

a 'tip credit.'" *Id.* The statutes impose differing requirements for an employer to claim such credit, but, as relevant here, both require an employer to provide notice to an employee that a tip credit will be deducted from the employee's wages. *See id.* at 497-98.

Under the FLSA, notice to an employee of the employer's application of a tip credit need not be in writing, but it must include: (i) "the amount of cash wage the employer is paying a tipped employee"; (ii) "the additional amount claimed by the employer as a tip credit"; (iii) a statement "that the tip credit claimed by the employer cannot exceed the amount of tips actually received by the tipped employee;" (iv) a statement "that all tips received by the tipped employee are to be retained by the employee except for a valid tip pooling arrangement"; and (v) a statement "that the tip credit will not apply to any tipped employee unless the employee has been informed of these tip credit provisions." Wage and Hour Division, U.S. Dep't of Labor, *Fact Sheet #15: Tipped Employees Under the Fair Labor Standards Act (FLSA))* (Apr. 2018); *see also* 29 U.S.C. § 203(m)). The employer bears the burden of establishing that it satisfied these requirements, and if the employer fails to do so it shall be liable for the entirety of an employee's minimum wage. *Gamero*, 272 F. Supp. 3d at 501.

A "critical distinction" between the tip-credit requirements of the NYLL and the FLSA is the former's mandate that notice be written and the employer must receive and retain for six years the employee's written acknowledgment of the notice. *See Gamero*, 272 F. Supp. 3d at 501; N.Y. Comp. Codes R. & Regs.

tit. 12, § 146-2.2(c). Indeed, before taking a tip credit, the NYLL requires an employer to "give each employee written notice of ... the amount of tip credit, if any, to be taken from the basic minimum hourly rate" and "[t]he notice shall also state that extra pay is required if tips are insufficient to bring the employee up to the basic minimum hourly rate." N.Y. Comp. Codes R. & Regs. tit. 12, § 146-2.2(a). In addition, the notice must be in English and "any other language spoken by the new employee as his/her primary language." *Id.* § 146-2.2(a)(1)-(2). As with the FLSA, the employer bears the burden to show that it has complied with the NYLL's tip-credit notice requirements. *See Gamero*, 272 F. Supp. 3d at 501.

### e. Employer Liability Under the FLSA and the NYLL

Of course, to be held liable under the FLSA for underpayment of wages, a defendant must be an "employer." *See Herman* v. *RSR Sec. Servs. Ltd.*, 172 F.3d 132, 139 (2d Cir. 1999). An "employer" includes "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). Courts have interpreted this definition broadly, "in accordance with the remedial purpose of the FLSA." *Zheng* v. *Liberty Apparel Co. Inc.*, 355 F.3d 61, 66 (2d Cir. 2003) (citations omitted).

"The definition of 'employer' is similarly expansive under [the NYLL], encompassing any 'person employing any [employee].'" *Doo Nam Yang*, 427 F. Supp. 2d at 342 (quoting NYLL § 2(6)). Courts in this Circuit have accordingly "interpreted the definition of 'employer' under the [NYLL] coextensively with the

definition used by the FLSA." *Spicer* v. *Pier Sixty LLC*, 269 F.R.D. 321, 335 n.13 (S.D.N.Y. 2010) (quoting *Jiao*, 2007 WL 4944767, at *9 n.12).

### 2.    Analysis

#### a.    Defendants Are Liable for Failing to Pay Plaintiff the Statutorily Mandated Minimum Wage

As just stated, to establish liability under either statute for underpayment of wages, a plaintiff must establish that the defendant was plaintiff's "employer." *See Herman*, 172 F.3d at 139 (speaking to the FLSA's definition of employer); *Doo Nam Yang*, 427 F. Supp. at 342 (discussing employer liability under NYLL). Here, the parties are in agreement that both BG Bar and Dimitrov were Plaintiff's employers under the broad definitions of the FLSA and the NYLL as interpreted by courts in this District. (Pl. Br. 5-6; Def. Opp. 3-4). *See Spicer*, 269 F.R.D. at 335 & n.13 (observing that the FLSA and NYLL are "to be construed broadly").[6] As such, the Court now considers whether Plaintiff has proven wage and hour violations under the NYLL.

Plaintiff's efforts are hampered by Defendants' failure to keep accurate records, so the Court first addresses the legal ramifications of that failure. Defendants argue that recordkeeping deficiencies do not serve as proof of an overtime or minimum wage violation, and that it remains Plaintiff's burden to establish the hours she worked and what she was paid for those hours. (Def. Opp. 4-5). These arguments, however, misperceive the relevant law.

---

[6]    As noted, Plaintiff is not pursuing employer liability as to Dimcheva at this stage of the proceedings. (Pl. Br. 6 n.5).

When an employer fails to maintain accurate records, a plaintiff must proffer "sufficient evidence from which violations of the [FLSA] and the amount of an award may be reasonably inferred." *Gonzalez*, 2017 WL 3835960, at *16 (quoting *Reich*, 121 F.3d at 66); *see also id.* (observing that "[a] similar standard applies to unpaid compensation claims under [the] NYLL"). Here, Defendants have conceded that they did not maintain complete and accurate records of Plaintiff's hours and wages. (Def. Opp. 4). And Plaintiff has proffered sworn testimony from Dimitrov admitting that Plaintiff was paid only $3.00 to $3.50 an hour plus tips, well under the minimum wages mandated by the FLSA, *see* 29 U.S.C. § 206(a)(1), and the NYLL, *see* NYLL § 652(1). This evidence is sufficient for the Court to infer violations of the NYLL. *Cf. Gamero*, 272 F. Supp. 3d at 504 (finding plaintiffs' sworn testimony that they were "systematically unpaid for the hours they worked" sufficient to meet their initial burden). As an employee's burden at this stage "is 'not high,'" *JRPAC*, 2016 WL 3248493, at *27 (quoting *Kuebel*, 643 F.3d at 362), the Court concludes that Plaintiff has made the initial showing that Defendants violated the NYLL.

The burden thus shifts to Defendants to prove that "[Plaintiff was] paid wages, benefits and wage supplements." NYLL § 196-a. And Defendants cannot discharge this burden merely by "undermining the reasonableness" of Plaintiff's evidence that she was unpaid. *Gamero*, 272 F. Supp. 3d at 498. Defendants here have not satisfied their burden, as they have not proffered any evidence of compliance with the statutory minimum wage requirements that

25

the Court credits, let alone demonstrated that they met such requirements by "a preponderance of the evidence." *Tapia* v. *BLCH 3rd Ave. LLC*, No. 14 Civ. 8529 (AJN), 2016 WL 4581341, at *4 (S.D.N.Y. Sept. 1, 2016); *cf. Gamero*, 272 F. Supp. 3d at 508 (finding that the Court was "hard-pressed" to conclude that plaintiff had discharged his initial burden under the NYLL where he was "thoroughly impeached" at trial).

Thus, Plaintiff's wages were impermissibly low unless Defendants satisfied the requirements of the FLSA and NYLL to claim a tip credit. Though Defendants maintain that Plaintiff was paid tips during her period of employment, and Dimitrov provided testimony to this effect during his deposition, Defendants have not demonstrated compliance with either the FLSA's or the NYLL's tip credit requirements. Under the NYLL, Defendants were required to: (i) provide Plaintiff written notice of the tip credit prior to the start of her employment, (ii) obtain Plaintiff's acknowledgement of receipt of that notice, and (iii) keep Plaintiff's acknowledgement on file for six years. *See* N.Y. Comp. Codes R. & Regs. tit. 12, § 146-2.2. It is Defendants' burden to demonstrate their compliance with the NYLL's tip notice requirement, *Salustio* v. *106 Columbia Deli Corp.*, 264 F. Supp. 3d 540, 554 (S.D.N.Y. 2017), and Defendants have not done so. At most, Defendants claim that BG Bar maintained posters in English and Spanish that purportedly explained the tip credit requirements. (Dimitrov Decl. ¶ 18). Putting to the side the fact that this claim is made in the Dimitrov Declaration, to which the Court pays little heed for these purposes, the posters as described are insufficient to meet the

26

notice requirements of either the FLSA or the NYLL.  *See Copantitla* v. *Fiskardo Estiatorio, Inc.*, 788 F. Supp. 2d 253, 289 (S.D.N.Y. 2011) (observing that a posted tip credit notice "constitutes sufficient notice only if the content of the poster is otherwise sufficient and it is prominently displayed" (citation omitted)); *see also JRPAC*, 2016 WL 3248493, at *24 ("[E]ven had a [Department of Labor] poster been prominently displayed in the workplace, [employer's] notification to [employees] merely that they would earn certain wages, without more, would not satisfy FLSA's notice provision for taking a tip credit.").[7]

Defendants are unable to refute Plaintiff's claims of unpaid wages or to demonstrate their entitlement to a tip credit allowance. Where Defendants have "fail[ed] to produce such evidence," the Court must find them liable for failing to pay Plaintiff the minimum wage, and must "award damages to [Plaintiff], even though the result may be only approximate." *Gonzalez*, 2017 WL 3835960, at *16 (internal quotation marks and citation omitted).  Such damages will be awarded pursuant to the NYLL, as it prescribes the higher minimum wage. *See Hengjin Sun*, 2016 WL 1587242, at *2.

The parties are in agreement as to a minimum number of hours worked by Plaintiff during the period in which she was employed by Defendants.  (Pl. Br. 7-8; Def. Opp. 2).  This number is based on records produced by

---

[7]      Further, Plaintiff submits that Defendants failed to produce such documents in discovery.  (Pl. Reply 10 n.4).

Defendants during this litigation.  (Pl. 56.1 ¶¶ 22-33).[8]  The following chart summarizes the amount to which Plaintiff is entitled based on Defendants' records of her hours during her period of employment (*id.* at ¶¶ 29-33); the applicable minimum wage under the NYLL, *see* NYLL § 652(1); and the hourly rate of $3.00 Plaintiff was paid as attested to by Dimitrov (*see* Dimitrov Dep. 49:20-22, 50:14-18).[9]

| Year | Minimum Number of Hours Worked | NYLL Minimum Wage | Difference Between Minimum Wage and Plaintiff's $3.00 Hourly Wage | Total Owed |
|---|---|---|---|---|
| 2014 | 252 | $8.00 | $5.00 | $1,260 |
| 2015 | 432 | $8.75 | $5.75 | $2,484 |
| 2016 | 970 | $9.00 | $6.00 | $5,820 |
| 2017 | 1314 | $11.00 | $8.00 | $10,512 |
| 2018 | 662 | $13.00 | $10.00 | $6,620 |

---

[8]     Plaintiff maintains that she worked more hours than Defendants' records reflect, and that a jury will need to determine the total number of hours she worked for Defendants. (Pl. Br. 7-8).

[9]     While Dimitrov testified that Plaintiff was paid a rate between $3.00 and $3.50, given the generality of his testimony, the Court will use the lower figure for the purposes of calculating Plaintiff's damages.  *Cf. Hengjin Sun* v. *China 1221, Inc.*, No. 12 Civ. 7135 (RJS), 2016 WL 1587242, at *2 (S.D.N.Y. Apr. 19, 2016) (observing that the court has "discretion to award Plaintiffs damages under the statute providing the greatest amount of relief").

Separately, the Court observes that the Dimitrov Declaration encloses checks addressed to Plaintiff that are described as reflecting Plaintiff's "house pay."  (*See* Dimitrov Decl., Ex. A-E; *id.* at ¶¶ 4-14).  Given the Court's determination that the Declaration cannot be relied upon to create an issue of material fact, the Court accepts Plaintiff's proposed methodology for determining the amounts she was paid by Defendants and the correlative damages owed.  The Court will not calculate Plaintiff's damages based on the checks annexed to Dimitrov's discredited declaration.

28

(*See* Pl. Br. 9-10).  Based on the record before the Court, as summarized in the above chart, Plaintiff is entitled to **$26,696** in back wages.

### b. Plaintiff Is Entitled to Liquidated Damages Under the NYLL

An employee may obtain liquidated damages under the NYLL in certain circumstances, as described in NYLL § 663:

> If any employee is paid by his or her employer less than the wage to which he or she is entitled under the provisions of this article, he or she shall recover in a civil action the amount of any such underpayments, together with costs all reasonable attorney's fees, prejudgment interest as required under the civil practice law and rules, *and unless the employer proves a good faith basis to believe that its underpayment of wages was in compliance with the law, an additional amount as liquidated damages equal to one hundred percent of the total of such underpayments found to be due.*  Any agreement between the employee, and the employer to work for less than such wage shall be no defense to such action.

NYLL § 663 (emphasis added).

As discussed above, Plaintiff has established that Defendants paid her less than the wages to which she was entitled during her period of employment.  Thus, the Court turns to the question of whether Defendants had "a good faith basis to believe that [their] underpayment of wages was in compliance with the law."  NYLL § 663.

To avoid liability for liquidated damages, the employer must show that it "took 'active steps to ascertain the dictates of the FLSA and then act[ed] to comply with them.'"  *Barfield* v. *N.Y.C. Health & Hosps. Corp.*, 537 F.3d 132, 150 (2d Cir. 2008) (quoting *Herman*, 172 F.3d at 142).  The employer also must

29

show that its good-faith actions were objectively reasonable. *See Herman*, 172 F.3d at 142-43. Under the NYLL, the employer faces a similar burden. *See Inclan*, 95 F. Supp. 3d at 505 (observing that "courts have not substantively distinguished the federal standard from the current state standard of good faith"). The Second Circuit has observed that "the employer's burden [is] 'a difficult one,'" and has emphasized that "'double damages [are] the norm and single damages the exception.'" *Barfield*, 537 F.3d at 150 (quoting *Herman*, 172 F.3d at 142).

In their briefing, Defendants advance an argument based on an outdated legal standard. Specifically, they claim that in order to award liquidated damages, the Court must find that they willfully disregarded their obligation to pay wages, and that such an inquiry is not properly determined at the summary judgment stage. (Def. Opp. 6-7). However, as correctly observed in Plaintiff's reply, Defendants' argument is based upon a previous iteration of the NYLL's liquidated damages provision. (Pl. Reply 8). Before the NYLL was amended in November 2009, it required the employee to prove that an employer's violation of the statute was "willful." *See Gamero*, 272 F. Supp. 3d at 502-03. This required a showing that the employer "'either knew or showed reckless disregard for … whether its conduct was prohibited by the' NYLL." *Id.* at 503 (quoting *Kuebel*, 643 F.3d at 366). The 2009 amendment modified this burden of proof, instead requiring the employer to prove good faith. *See id.*

Defendants have not satisfied that difficult burden here. Defendants do not contend that they made any attempts to comply with their obligations

under the FLSA and the NYLL, and the record is bereft of any such efforts.
Though Dimitrov indicated in his deposition that he had consulted with an
accountant as to his pay practices for the bartenders in his employ, judging
from the flawed wage practices described in Dimitrov's deposition and
excerpted in this Opinion, as well as the inaccurate guidance that Dimitrov
related during his deposition, the Court is skeptical of any meaningful
consultation on labor law issues. (*See, e.g.*, Dimitrov Dep. 52:13-21 (testifying
that his accountant had told him that bartenders receive a "special" minimum
wage of "something like" $3.50)). Moreover, Dimitrov testified in his deposition
that he had not consulted with a lawyer or any other professional before
deciding on BG Bar's payroll practices. (*Id.* at 52:22-24, 54:9-12). Dimitrov
indicated that he had instead relied upon ADP for compliance with payroll
practices. (*Id.* at 53:6-23; *see also* Def. 56.1 ¶ 48 (representing that Defendants
"relied upon the ADP payroll company for compliance with federal and/or state
law.")). However, this reliance "plainly does not qualify as an '*active* step[ ] to
ascertain the dictates of the [law] and then act to comply with them.'" *Dudley*
v. *Hanzon Homecare Servs., Inc.*, No. 15 Civ. 8821 (JMF), 2018 WL 481884, at
*5 (S.D.N.Y. Jan. 17, 2018) (quoting *Barfield*, 537 F.3d at 150) (finding that
employer had not met her burden of demonstrating good faith where she
claimed that she used a "payroll service provider" and believed that the
provider would have notified her company if it were not in compliance with the
relevant wage laws).

31

Accordingly, Plaintiff is entitled to liquidated damages under the NYLL in the amount of 100 percent of back wages, which is **$26,696.**

### c. Plaintiff Is Entitled to Damages for Notice and Wage Statement Violations

The NYLL requires employers to provide annual wage notices to employees hired after April 9, 2011, and to provide each employee with accurate wage statements at the time wages are paid. *See* NYLL § 195(1)(a) & (3). Plaintiff has claimed that she received no such notices either at the beginning or for the duration of her employment. (*See* Pl. 56.1 ¶ 44). Defendants' only response, put forth in Dimitrov's discredited declaration, is that BG Bar had posters that set forth the applicable wage-and-hour laws. (Dimitrov Decl. ¶ 18; *see also* Def. 56.1 ¶ 44). However, as discussed above, even were the Court willing to accept this representation, Defendants have not submitted the posters themselves, let alone any details about the content of such posters that would enable the Court to assess their sufficiency.[10] Moreover, at least one other court in this District has found that such posted notices do not meet the individualized notice requirements of NYLL § 195(1)(a). *See Pineda* v. *Frisolino, Inc.*, No. 15 Civ. 3774 (GBD), 2017 WL 3835882, at *12 n.15 (S.D.N.Y. Aug. 29, 2017).

Defendants have also failed to meet the requirements of NYLL § 195(3). Defendants have effectively conceded that Plaintiff was not provided accurate

---

[10] Further, Plaintiff submits that Defendants failed to produce both these posters and any other wage notices, though such documents would have been responsive to Plaintiff's discovery requests. (Pl. Reply 10 n.4; Pl. 56.1 ¶¶ 45-47).

wage statements.  In particular, Defendants conceded throughout their Local Rule 56.1 Statement that they did not dispute Plaintiff's allegation "that her pay stubs did not represent the correct number of hours worked by her and did not represent an accurate and exact amount of hourly wages that she was paid." (Def. 56.1 ¶¶ 36-39, 41-42).  As such, the Court finds that Plaintiff is entitled to summary judgment on both her claims of notice and wage statement violations.

Under NYLL § 198(1-b), employees are entitled to recover wage-notice statutory damages of $50 dollars "for each work day that the violations occurred or continue to occur," not to exceed $5,000.  In the instant case, this means that Plaintiff is entitled to **$5,000** in wage-statement statutory damages.  Under NYLL § 198(1-d), employees are entitled to recover wage-statement statutory damages of $250 dollars "for each work day that the violations occurred or continue to occur," not to exceed $5,000.  Here, this results in an additional **$5,000** due Plaintiff.

## CONCLUSION

For the reasons stated in this Opinion, Plaintiff's motion for partial summary judgment is GRANTED, and Plaintiff's motion to strike is DENIED. The Court finds that Plaintiff is entitled to $26,696 in back wages under the NYLL; $26,696 in liquidated damages; $5,000 for Defendants' violation of NYLL § 195(1); and $5,000 for Defendants' violation of NYLL § 195(3).

The Clerk of Court is directed to terminate the motion at docket entry 40. The parties are directed to submit a joint status letter regarding proposed next steps in the case on or before **March 8, 2021**.

SO ORDERED.

Dated:      February 8, 2021
            New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge